**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION**

**CHRISTOPHER LYNN CORMIER,**

**Petitioner,**

**v.** **Case No. 3:18cv444-LC/CAS**

**MARK S. INCH, Secretary, Florida Department of Corrections,[1]**

**Respondent.**

**_______________________________/**

**REPORT AND RECOMMENDATION TO DENY § 2254 PETITION**

On March 16, 2018, Petitioner, Christopher Lynn Cormier, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se under the mailbox rule, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Ex. No. 1. Without leave of court, Petitioner filed an amended § 2254 petition on July 3, 2018. ECF No. 9. Respondent filed an answer, with record exhibits, on August 7, 2018. ECF No. 10. Pursuant to motion and order granting leave, Petitioner filed a Second Amended § 2254 petition on October 9, 2018. ECF No. 13. On December 10, 2018,

[1] The Clerk of Court shall substitute Mark. S. Inch as Secretary of the Florida Department of Corrections. Mark S. Inch succeeded Julie L. Jones as Secretary of the Department of Corrections and is automatically substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

Respondent filed a notice of adopting the previously filed answer. ECF No. 15. Petitioner filed a reply on March 20, 2019. ECF No. 20.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and the Second Amended § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Information filed on December 7, 2012, in the Circuit Court of Escambia County, Florida, with three counts alleging that on, during or between August 27, 2012, and September 6, 2012, in Escambia County, Petitioner (1) was an accessory after the fact to first degree murder by assisting William Cormier, III, to avoid or escape detection, arrest, trial or punishment; (2) was an accessory after the fact to robbery with a deadly weapon by assisting William Cormier, III, to avoid or

escape detection, arrest, trial or punishment; and (3) committed burglary of an unoccupied dwelling of Sean Dugas. Ex. A.[2]

On January 31, 2014, Petitioner entered an open plea of no contest to the counts as charged. Exs. C, E. On February 13, 2014, Petitioner was sentenced to fifteen years in prison on each count, concurrent, with credit for time served of 455 days, consistent with the conditional cap the judge stated he would likely impose. Exs. B, D, E at 4 (transcript pagination). No appeal was taken from the convictions and sentence. *See* ECF No. 1 at 1.

On March 12, 2015, pursuant to the mailbox rule, Petitioner filed a motion for post-conviction relief in state court pursuant to Florida Rule of Criminal Procedure 3.850. Ex. G at 42-57. In the motion, Petitioner claimed that (1) law enforcement violated Georgia law when he was not brought before a judicial officer within 72 hours of his arrest and he was not provided counsel when requested; (2) defense counsel was ineffective for failing to file a meritorious motion to suppress confession obtained illegally during the time Petitioner was denied the right to counsel; and (3) defense

[2] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through K submitted in conjunction with Respondent's answer. *See* ECF No. 10, 10-1 through 10-11.

counsel was ineffective for failing to properly prepare for trial, which rendered Petitioner's plea involuntary. Ex. G at 46-55.

An evidentiary hearing was held on the three claims on November 17, 2016. Ex. G at 120-247. On November 22, 2016, the post-conviction court denied the motion. Ex. G at 725-84. Petitioner appealed to the First District Court of Appeal raising two issues in his pro se brief: ineffective assistance of counsel for failure to file a meritorious motion to suppress confession and ineffective assistance for failure to properly prepare for trial, rendering the plea involuntary in that it was entered out of fear of counsel's lack of preparation. Ex. H. The state filed an answer brief, Ex. I, and Petitioner filed a reply brief. Ex. J. The appellate court affirmed per curiam without opinion on March 1, 2018, and issued the mandate on March 29, 2018. Ex. K. *See* Cormier v. State, 242 So. 3d 334 (Fla. 1st DCA 2018) (table). Petitioner filed his Second Amended § 2254 petition in this Court raising the following four grounds for relief:

> (1) Defense counsel rendered ineffective assistance in failing to file a meritorious motion to suppress confession, resulting in Petitioner's open plea;
>
> (2) Defense counsel rendered ineffective assistance by failing to adequately prepare for trial and allowing a coerced and involuntary plea;
>
> (3) Trial court erred in relying on an erroneous finding that Petitioner initiated contact with Florida police; and

> (4) Fundamental error and manifest injustice occurred in conviction of Petitioner for accessory after the fact to crimes committed by his twin brother; Petitioner is actually innocent.

ECF No. 13 at 5-10.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances. Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)). In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)). Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275 (citation omitted)). "This rule of comity reduces friction between the state

and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."

Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim). A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice. *See* Schlup v. Delo, 513 U.S. 298, 327 (1995). This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494). Such a case is "extremely rare." Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not

fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011). Credibility and demeanor of a witness are considered to be questions of fact entitled to a presumption of correctness under the AEDPA and the Petitioner has the burden to overcome the presumption by clear and convincing evidence. *Id.*

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Burt v. Titlow, 134 § Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690). Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id.* at 13. The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. *See* Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. Strickland, 466 U.S. at 697.

**Ground 1: Failure to File Motion to Suppress**

Petitioner contends that defense counsel rendered ineffective assistance (IAC) in failing to file a meritorious motion to suppress his confession, resulting in Petitioner's open plea. ECF No. 13 at 5. He argues that his confession occurred during his custody after arrest in Georgia, where he was forced to spend eight days in the booking department. *Id.* Petitioner raised a similar claim in his Rule 3.850 motion

in state court. Ex. G at 49. There, he contended that he was held in the booking department of the Georgia Barrow County Sheriff's Office for nine days and was denied the right to speak with counsel even though he requested counsel. *Id.* at 50. He contended that he was held in a coercive environment and denied the right to confer with counsel or his family, resulting in two involuntary confessions. *Id.* He further contended that the second confession was involuntary because the police convinced his father to lead him into giving a confession. *Id.* Petitioner alleged that he asked his defense counsel to file a motion to suppress on these grounds and, although she agreed the grounds were strong, she failed to file a motion to suppress. *Id.* at 50-51. The post-conviction court held an evidentiary hearing on this and other claims on November 17, 2016, Ex. G at 120, and denied relief. Ex. G at 729. Petitioner appealed and the state First District Court of Appeal affirmed without discussion. Ex. H, K.

In denying relief, the post-conviction court stated that in a Rule 3.850 motion, Petitioner cannot go behind the plea and raise issues known to him when he entered the plea. Ex. G at 728. The court also noted that Petitioner was well aware of the grounds for a motion to suppress when he entered his plea and that, at the plea colloquy, he waived any potential defense by entering his plea. *Id.* at 728-29. The court noted that defense

counsel testified at the evidentiary hearing that Petitioner agreed with the strategic decision not to seek suppression of the statements. Ex. G at 729.

At the evidentiary hearing, Petitioner's defense counsel testified that she took a lot of depositions, including those of every witness listed by the state, and travelled to Georgia to depose those witnesses. Ex. G at 213. She testified that a lot of investigation was done in the case by her and by her two investigators. *Id.* at 214. She had Petitioner evaluated by a doctor based on his noncommunicative conduct on several occasions. *Id.* at 215. She learned that he had a drug problem, but was competent to proceed. *Id.* She testified that she sat through his brother's trial for five days and watched all those witnesses testify prior to Petitioner's sentencing.[3] *Id.* at 216. She said she discussed all the evidence that she investigated with Petitioner, gave him copies of the statements he made to law enforcement, and discussed the filing of a motion to suppress. *Id.* at 216-17.

Counsel testified she did not believe there were any grounds to file a motion to suppress the statements. *Id.* at 219. She said she talked to Petitioner about the decision not to file a motion to suppress and he

---

[3] Counsel explained that the same judge who tried his brother's case was the judge who would sentence Petitioner. The judge had explained at the entry of the plea, prior to the brother's trial, that if the judge were to learn anything during the brother's trial that convinced him to go above a fifteen-year conditional cap in sentencing Petitioner, he would allow Petitioner to withdraw the plea; thus, it was possible Petitioner would be going to trial. Ex. G at 224-45.

agreed. *Id.* at 219-20. She explained there was a risk that if a motion to suppress were filed, the state would charge Petitioner with murder, and the judge had agreed at a case management conference that he would cap the sentences on the pending charges at fifteen years. *Id.* at 220, 232. She testified that she discussed the evidence with Petitioner and there was substantial evidence against him without the confessions. *Id.* at 222. She said Petitioner wanted to enter a plea and present mitigation. Ex. G at 221. She did not recall Petitioner telling her the police in Georgia told him he could not leave unless he talked to police, but he did tell her they held him for six days without any food and that he had asked for an attorney. *Id.* at 22, 228. She denied that he ever stressed to her the need for her to file a motion to dismiss. *Id.* She testified that after she deposed the officers in Georgia, she did not believe she had a good faith basis to file a motion to suppress. *Id.* at 230. She did not recall telling Petitioner he would get only six and one half years in prison. *Id.* at 232.

The record supports the post-conviction court's finding that defense counsel and Petitioner, together, made a strategic decision not to file a motion to suppress and to enter a plea to the charges. The court found defense counsel's testimony credible. Ex. G at 729. As noted earlier, "[d]etermining the credibility of witnesses is the province and function of the

state courts, not a federal court engaging in habeas review." Consalvo, 664 F.3d at 845. Credibility is considered to be a question of fact entitled to a presumption of correctness under the AEDPA, and the Petitioner has the burden to overcome the presumption by clear and convincing evidence. *Id.* After extensive discovery by counsel, after concluding there were no good faith grounds to file a motion to suppress, and after discussing the case with Petitioner and advising him that if the motion to suppress was filed, there was a strong likelihood that the State would charge him with murder, counsel made a tactical decision with agreement by Petitioner not to file a motion to suppress. Reasonable tactical decisions by counsel do not constitute deficient performance. Sims v. Singletary, 155 F.3d 1297, 1306-07 (11th Cir. 1998)

In addition, the post-conviction court found prejudice could not be established because, even if Petitioner's statements to law enforcement were suppressed, there was other substantial evidence that incriminated him in the charges of aiding and abetting his brother after the murder and robbery. Ex. G at 729-30. The prosecutor in Petitioner's case testified at the evidentiary hearing that the investigation disclosed witnesses who had purchased collectible "Magic Cards" from Petitioner and his brother, which cards were identified as having been in the victim's collection and were

worth thousands of dollars. Ex. G at 181-82. The victim's body was buried in Georgia in the yard of Petitioner's family's residence. Ex. G at 180, 202. The prosecutor testified that Petitioner's blood was found on some broken glass in a window of the house that also had evidence of the victim's blood. Ex. G at 184-85. The prosecutor testified at the evidentiary hearing that after the jury found Petitioner's brother guilty of murder, she asked the judge to withdraw the sentence cap, which she argued was not appropriate, so that she could try the case against Petitioner. Ex. G at 189-90; 748.

The State had videos of Petitioner with his brother in Walmart purchasing supplies that were recovered in the container holding the victim's body. Ex. G at 202. Petitioner's father told law enforcement that Petitioner and his brother had buried the victim in the yard of his Georgia property. Ex. G at 203, 677. Petitioner came to Georgia with a U-Haul truck and hired a teenage cousin to dig a hole in the yard of the Georgia property. Ex. G at 504-07, 702-03. After digging the hole, Petitioner gave him a "huge tote" to put in the hole to see if it would fit. Ex. G at 507. The brothers had comic books to sell in the U-Haul. Ex. G at 512, 693. In light of that evidence, Petitioner did not demonstrate a reasonable probability—one sufficient to undermine confidence in the outcome—that but for

counsel's alleged error, the outcome of the proceedings would be different. *See* Strickland, 466 U.S. at 694.

Importantly, the state court was correct that by entering his plea, Petitioner waived his right to have counsel further investigate or file a motion to suppress. *See, e.g.*, Stano v. Dugger, 921 F.2d 1125, 1150 (11th Cir. 1991); Tiemens v. United States, 724 F.2d 928, 929 (11th Cir. 1984); Scott v. Wainwright, 698 F.2d 427, 429 (11th Cir. 1983). This includes the right to challenge the circumstances under which he gave statements to law enforcement. The Court allows challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions" in counsel's advice regarding the plea. Stano, 921 F.2d at 1150-51 (citing McMann v Richardson, 397 U.S. 759, 774 (1970); Tollett v. Henderson, 411 U.S. 258, 267 (1973)). Petitioner did not identify any serious derelictions in counsel's advice regarding the plea, and the circumstances of the plea hearing demonstrate that the plea was voluntarily and intelligently given.

At the plea hearing, Petitioner confirmed to the court that he had discussed the plea with his attorney; that he was satisfied with the services of his attorney; that he was giving up all his trial rights; that he was provided no assurances of the outcome of the case; and that he was not

threatened or made to enter a plea. Ex. G at 756-59. He stated to the court that he did not see his brother kill the victim, but he found the body in the garage, helped clean up the garage, and helped hide it by burying it in the family's yard. Ex. G at 759-60. He stated that the victim's Magic Cards were stolen. He confirmed to the court that he understood he was giving up all conceivable defenses to the crimes. Ex. G at 761-62. The court found the plea "to be freely, voluntarily, knowingly, and intellectually (sic) made." Ex. G at 765. Petitioner's voluntary and intelligent plea forecloses federal habeas review of constitutional error that is alleged to have occurred prior to entry of the plea. *See* Tollett, 411 U.S. at 266-67.

For all these reasons, Petitioner has not provided any facts or authority to demonstrate that the adjudication of the state court was contrary to or an unreasonable application of any federal law as determined by the Supreme Court or an unreasonable determination of the facts in light of the state court record. Habeas relief on Ground 1 should be denied.

**Ground 2: IAC in Trial Preparation**

Petitioner contends that defense counsel rendered ineffective assistance by failing to adequately prepare for trial because counsel did not discover and advise Petitioner that he could not be convicted of the two accessory-after-the-fact charges where the underlying crimes were

committed by his twin brother. ECF No. 13 at 6. He argues that this failure to investigate and to advise resulted in him believing he faced a maximum sentence for all counts of 60 years, not just the 15 years he alleges he would have faced if he had known he could not be convicted of the two accessory charges. He contends that he would not have entered pleas to the two accessory counts if he had been correctly advised, thus his plea to those counts was involuntary. *Id.*

This ground differs from that raised in his Rule 3.850 motion in state court, in which he contended that his counsel failed to prepare for trial, did no investigation, formulated no defenses, failed to file a motion to suppress, withheld discovery material from him, and presented no evidence on his behalf. Ex. G at 54. He did not allege in his Rule 3.850 motion in the state post-conviction court that defense counsel was ineffective for misadvising him about his criminal liability as accessory after the fact to crimes committed by his brother.[4] Regardless of any failure to exhaust the claim because this specific allegation was not presented to each appropriate State court for determination, this aspect of Ground 2 should be denied because it is without merit.

---

[4] *See* Petitioner's Rule 3.850 motion. Ex. G at 42-55. Petitioner raised that aspect of the claim for the first time in his initial brief on appeal from denial of post-conviction relief. Ex. H at 10.

Section 777.03(1)(a) provides in pertinent part that any person, except one who assists a husband, wife, parent or grandparent, child or grandchild, brother or sister, by helping the offender avoid or escape detection, knowing that the person committed a "third degree felony," is an accessory after the fact. § 777.03(1)(a), Fla. Stat. (2012).

In the present case, Petitioner was charged as an accessory after the fact for aiding his brother after his brother committed first-degree murder, a capital felony under section 782.04(1)(a), Florida Statutes, as alleged in count one, and robbery with a deadly weapon, a first-degree felony under section 812.13(2)(a), Florida Statutes, as alleged in count two of the Information. Section 777.03(1)(c) explicitly provides that any person, without exception, who assists the principal after the fact to avoid detection, arrest or trial is an accessory after the fact if the underlying offense was a capital, life, or first-degree or second-degree felony. Accordingly, defense counsel did not misadvise Petitioner by telling him he faced a maximum sentence for all three counts of 60 years.

To the extent that this claim alleges generally that his defense counsel failed to investigate, that claim was raised in his Rule 3.850 motion and he was provided an evidentiary hearing. Ex. G at 52. As noted in Ground 1, *supra*, Petitioner's defense counsel testified that she took

depositions of every witness listed by the state. Ex. G at 213. She sat through his brother's trial for five days and watched all those witnesses testify prior to Petitioner's sentencing in case it turned out that Petitioner would withdraw his plea and go to trial.[5] *Id.* at 216. She testified that she discussed all the evidence that she investigated with Petitioner and gave him copies of the statements he made to law enforcement. *Id.* at 216-17. She said she let him read all the depositions and discussed them with him. Ex. 214. She had the Georgia Bureau of Investigations case file. *Id.* at 213. The prosecutor in Petitioner's case testified that she gave four boxes of discovery to defense counsel. Ex. G at 188. Defense counsel had two investigators working on the case with her. *Id.* at 214.

The post-conviction court denied the claim that trial counsel was unprepared for trial, resulting in Petitioner entering involuntary pleas to the charges. The court found that defense counsel's testimony was credible and that she was prepared for trial. Ex. G at 730. In addition, the court stated:

---

[5] The transcript of Petitioner's brother's trial is not in the record, but the First District Court of Appeal related portions of that evidence in its opinion affirming denial of post-conviction relief to William Cormier, III, in Cormier v. State, 253 So. 3d 75 (Fla. 1st DCA 2018). The court stated in part: "The Appellant's defense at trial was to blame his brother [Petitioner] for the murder and claim that several other witnesses were lying." *Id.* at 79. The court also noted that William Cormier claimed he purchased the tote, air fresheners, and tarp used to conceal the body on his brother's instruction. *Id.*

> The Court finds that the Defendant chose to enter his plea due to the offered sentencing cap of 15 years by Judge Terrell when he faced a potential of 60 years in state prison. In light of the strength of the evidence against the Defendant, counsel would have likely been deemed ineffective had she advised the Defendant to reject this offer and proceed to trial. There is no credible evidence that the Defendant entered his plea due to counsel's level of preparation.

Ex. G at 730-31. Petitioner appealed from denial of post-conviction relief and the state appellate court affirmed per curiam without discussion. Ex. K. *See* Cormier v. State, 242 So. 3d 334 (Fla. 1st DCA 2018) (table).

Petitioner has demonstrated neither deficiency nor prejudice as required by Strickland. 466 U.S. at 687. Petitioner has failed to demonstrate that the state court adjudication resulted in a decision that is contrary to or an unreasonable application of federal law as determined by the Supreme Court or that it was an unreasonable determination of the facts in light of the state court record. Relief under § 2254 on Ground 2 should be denied.

## Ground 3: Law Enforcement Interview

Petitioner next contends that state court erred in finding that Petitioner initiated contact with Florida police when denying his claim for post-conviction relief that counsel was ineffective for not filing a motion to suppress. ECF No. 13 at 8 (restated). The post-conviction court's order finding that defense counsel was not deficient and that prejudice had not

been shown did not rely on any finding that Petitioner initiated the interview with Pensacola police.

The State, in its written response to the order to show cause concerning Petitioner's Rule 3.850 motion, alleged that Pensacola Police Detective Harnett's October 16, 2012, arrest report stated that he met with Petitioner in Georgia "in response to [Petitioner's] request that Law Enforcement meet with him to discuss the case." Ex. G at 61. At the evidentiary hearing, however, Detective Harnett explained that Pensacola police were advised that Petitioner "had asked to speak with law enforcement." Ex. G at 195. Harnett testified that a special agent for the Georgia Bureau of Investigation advised him they were going to speak with Petitioner and Harnett requested that they "pass on a request, see if he was willing to speak with me. He said he was." *Id.* Harnett testified that this happened on several occasions. Detective Harnett also submitted as evidence a Pensacola Police Rights Form signed by Petitioner. *Id.* at 196-97. Thus, Detective Harnett explained how it came to be that he interviewed Petitioner in Georgia and took a statement from him.

Regardless of how the interview with Detective Harnett was initiated, in denying the claim that defense counsel was ineffective for not filing a motion to suppress, the state court did not rely on the circumstances

surrounding Petitioner's interview with law enforcement or on any finding that Petitioner initiated contact with Florida Police. As discussed in Ground 1, *supra*, the state court denied relief, finding that Petitioner cannot go behind the plea and raise issues known to him when he entered the plea. Ex. G at 728. The court noted that he waived any potential defense by entering his plea. *Id.* at 728-29. The court also found that defense counsel made a reasonable strategic decision not to seek suppression of the statements and that, regardless of any alleged error of counsel, prejudice was not shown. Ex. G at 729. The appellate court affirmed.

For these reasons, and the reasons set forth in Ground 1, *supra*, entitlement to habeas relief under § 2254 has not been shown and Ground 3 should be denied.

**Ground 4: Fundamental Error**

Finally, Petitioner contends that fundamental error and manifest injustice occurred in his conviction for accessory after the fact to two crimes committed by his twin brother.[6] ECF No. 13 at 10. He also contends that he is actually innocent. ECF No. 13 at 10. This claim is based on the

[6] Petitioner attempted to raise this claim in the state appellate court in the appeal from denial of post-conviction relief by alleging fundamental error in his reply brief. Ex. J at 8. Under Florida law, however, claims not presented in the initial brief and only raised in the reply brief are deemed abandoned and not properly before the appellate court. *See* Land v. Fla. Dep't of Corr., 181 So. 3d 1252, 1254 (Fla. 1st DCA 2015) (citing Hoskins v. State, 75 So. 3d 250, 257 (Fla. 2011)).

same erroneous premise discussed in Ground 2, *supra*, where he argued that defense counsel rendered ineffective assistance by not advising him he could not be convicted as an accessory after the fact to the crimes committed by his brother. As discussed in Ground 2, section 777.03(1)(a) does not apply to shield Petitioner from charges of accessory after the fact to capital and first-degree felony offenses as alleged in the Information in this case.

Respondent contends that the claim is unexhausted and procedurally defaulted. Petitioner responds in his reply that he never raised this fundamental error claim in state court because he had no post-conviction counsel, thus establishing cause for non-exhaustion under Martinez v. Ryan, 566 U.S. 1 (2012). ECF No. 20 at 9. Martinez created a narrow exception that applies "where state law requires prisoners to raise claims of ineffective assistance of trial counsel 'in an initial-review collateral proceeding,' rather than on direct appeal." *Id.* at 16, 17. Thus, Martinez applies only to excusing procedural default of claims of ineffective assistance of trial counsel. Chavez v. Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 945 (11th Cir. 2014). *See also* Luciano v. Sec'y, Dep't of Corr., 701 F. App'x 792, 793, 794 (11th Cir. 2017) (unpublished) (reiterating that "Martinez applies only to excusing a procedural default of ineffective-trial-

counsel claims" and that generally, "lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse a procedural default"); Abdur'Rahman v. Carpenter, 805 F.3d 710, 716 (6th Cir. 2015) (holding that Martinez does not apply to trial errors). This claim is not one of ineffective assistance of trial counsel, so Martinez does not apply. Further, Petitioner's pro se status does not provide a basis on which to excuse procedural default. Luciano, 701 F. App'x at 793.

Regardless of Petitioner's failure to exhaust this claim in each appropriate state court, as explained above, Ground 4 is without merit and should be denied.

**Conclusion**

Based on the foregoing, Petitioner Christopher Lynn Cormier is not entitled to federal habeas relief. Accordingly, the Second Amended § 2254 petition (ECF No. 13) should be denied.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the Second Amended § 2254 petition (ECF No. 13). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**. The Clerk of Court shall

substitute Mark. S. Inch as Secretary of the Florida Department of Corrections.

**IN CHAMBERS** at Tallahassee, Florida, on March 27, 2019.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**